UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:11-CR-047 |
| | ) | |
| JOSHUA R. CONLEY-LOGAN | ) | |

### MEMORANDUM AND ORDER

Now before the Court is the defendant's *pro se* motion for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A)(i). [Doc. 631]. The United States has responded in opposition [docs. 636, 640], and the defendant has not replied within the time allowed by this Court's Local Rules. For the reasons that follow, the defendant's motion will be denied.

### I. BACKGROUND

In February 2012, this Court sentenced the defendant to a net term of 180 months' imprisonment for various methamphetamine offenses. The defendant is presently housed at USP Canaan, a high security facility, with a projected release date of August 20, 2024. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Jun. 9, 2021). He now moves for compassionate release due to the COVID-19 pandemic, obesity, hepatitis B and C, his age (41), mental health issues ("Personality disorder with cluster B traits including antisocial and borderline Adjustment disorder with disturbance of conduct," for which he

blames the staggering 18 disciplinary sanctions incurred during his current incarceration), and his "unjustly leangthy [sic] sentence and sentence disparities."[1]

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

---

[1] The defendant also raises arguments pertaining to his conditions of confinement. Such claims might be cognizable, *see, e.g., Estelle v. Gamble*, 429 U.S. 97 (1976), but they should be presented in a civil lawsuit in the prisoner's district of confinement after the exhaustion of administrative remedies. *See* 42 U.S.C. § 1997e(a). There is no evidence that this defendant has exhausted his administrative remedies on those claims, nor is he incarcerated in this judicial district.

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit have previously turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but are no longer to do so, at least as to compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, 984 F.3d 516 (6th Cir. 2021).[2] "District courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114.

### A. Exhaustion

The defendant has previously submitted a compassionate release request to the BOP, and more than 30 days have passed since that request was received by the warden. [Doc. 631, ex. 2]. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

### B. Merits

As mentioned above, in support of his motion the defendant cites the COVID-19 pandemic, obesity, hepatitis B and C, his age (41), mental health issues, and the length of his sentence.

---

[2] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

3

Consistent with § 3582 and the Sixth Circuit's holding in *Jones*, this Court has considered the defendant's arguments (individually and in combination) along with the broader facts of this case in light of the pertinent § 3553(a) factors. Pursuant to 18 U.S.C. § 3553(a),

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>>
>>> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>>>
>>> (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .
>
> . . .

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

At the defendant's correctional institution, there are currently zero inmates and one staff positive for COVID-19, with 293 inmates and 75 staff having recovered, and no inmate or staff deaths. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Jun. 9, 2021). These numbers are historically significant, but the Court simultaneously notes that outside the prison setting our nation remains on alert in terms of COVID diagnoses, variants, hospitalizations, deaths, and lagging vaccination rates. Further, the COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone

cannot independently justify compassionate release[.]").

Additionally, the BOP's vaccination efforts are underway, with 166 staff and 936 inmates having been fully vaccinated at the defendant's prison. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Jun. 9, 2021). In fact, the defendant himself has been fully vaccinated. [Doc. 640].

BOP medical records confirm that the defendant has been diagnosed with, and is treated for, hepatitis B and C. [*Id.*]. The defendant has admittedly provided no documentation of his purported obesity. He is also treated for major depressive disorder and unspecified mood and personality disorders. [*Id.*].[3]

The BOP's SENTRY Report shows that the defendant is categorized as Care Level 2 in terms of his mental health. "Care Level 2 inmates are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical . . . conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring. Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time." *See* http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited Jun. 9, 2021). Physically, the defendant is categorized as Care Level 1. "Care Level 1 inmates are less than 70 years of age and are generally healthy. They may have limited medical needs that can be easily managed by clinician evaluations every 6 to 12 months." *See id.*

---

[3] It is by no means uncommon, let alone extraordinary, for this Court to impose a term of imprisonment on a person with mental health issues.

The Court has considered the defendant's arguments, individually and in combination, and concludes that he has not met his burden of demonstrating extraordinary and compelling grounds for compassionate release. The health issues cited by the defendant, viewed in tandem with the COVID-19 pandemic, are not of a severity to justify compassionate release. Further, the defendant is now fully vaccinated against the virus, thereby significantly reducing his odds of contracting it.

Adding the length of the defendant's prison sentence to the mix does not change the result. It is not at all extraordinary for a defendant to be dissatisfied with his sentence. The Court additionally notes that the length of this defendant's sentence was primarily driven by his conduct in this case—the quantity of drugs manufactured and the substantial risk of harm he created to the life of his three-year-old son. [Presentence Investigation Report ('PSR"), ¶¶ 26-27]. Moreover, the sentence imposed by this Court reflected a 55-month downward variance from the bottom of the advisory guideline range. [*Id.*, ¶ 65].

Additionally, compassionate release in this case would not be consistent with the 18 U.S.C. § 3553(a) factors. As noted, the defendant manufactured a large quantity of methamphetamine, causing great harm both to society and to his young child who tested positive for that drug. [*Id.*, ¶¶ 21, 26]. The Court also notes the defendant's criminal history which includes theft, controlled substance, driving, failure to appear, and assault convictions, plus two revocations of probation. [*Id.*, ¶¶ 39-46]. According to SENTRY, the BOP considers him a medium security inmate with a high risk of recidivism.

Most concerning, however, is the defendant's conduct since this Court sentenced him. True, he has earned his GED while incarcerated and appears to be a participant in the

BOP's Residential Drug Abuse Program. The Court commends him for those accomplishments.

Conversely, SENTRY shows that while in BOP custody the defendant has incurred an almost unthinkable 18 disciplinary sanctions, more than a third of which have occurred in the last three years. There have been seven instances of use of drugs or alcohol, four cases of insolence to staff or refusing work assignments, and sanctions for fighting, unauthorized exchange of money, possessing unauthorized items, possession a dangerous homemade weapon, and assault (twice). The defendant's attempt to now offer his mental health issues as an excuse for those infractions [doc. 631, ex. 2] is absolutely rejected by this Court.

Compassionate release on these facts would not reflect the seriousness of the offense of conviction and the defendant's broader criminal history, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes of this defendant.

### III. CONCLUSION

As provided herein, the defendant's motion for compassionate release [doc. 631] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge

8

Case 2:11-cr-00047-RLJ   Document 642   Filed 06/16/21   Page 8 of 8   PageID #: 2327